PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES VALLADARES,

        *Plaintiff-Appellee,*

    v.

VICTOR CORDERO,

        *Defendant-Appellant.*

No. 07-1995

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:06-cv-01378)

Argued: October 30, 2008

Decided: January 12, 2009

Before GREGORY and DUNCAN, Circuit Judges,
and Richard D. BENNETT, United States District Judge for
the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Judge Duncan and Judge Bennett joined.

## COUNSEL

Mary Alice Rowan, COUNTY ATTORNEY'S OFFICE,
Prince William, Virginia, for Appellant. James Arthur

DeVita, BUTLER LEGAL GROUP, P.L.L.P., Washington, D.C., for Appellee.

---

## OPINION

GREGORY, Circuit Judge:

In this case, Officer Victor Cordero, Appellant, challenges the district court's denial of his motion for summary judgment in which he asserted the affirmative defense of qualified immunity. For the reasons stated herein, the district court's decision is affirmed.

I.

At approximately 8:00 p.m. on December 8, 2005, Officers Cordero and Anthony Notarantonio arrived at the home of Josefina Valladares in response to a domestic disturbance reported to the Prince William County Police Department. The officers discovered that Ms. Valladares called the police because she was having a dispute with her elder son, Boris Valladares ("Boris"), age twenty-five, who had come home intoxicated. Officer Cordero, a native Spanish speaker, attempted to mediate the dispute. According to Officer Cordero, he told Boris to respect his mother but, despite Ms. Valladares' insistence, refused to arrest Boris.

Before the officers arrived, James Valladares ("James"), Ms. Valladares' fifteen-year-old son, became so frustrated by the fight between his mother and brother that he ran outside to his driveway and sat by his mother's car text messaging his girlfriend. When Officer Cordero left the Valladares' home he approached James, shined a flashlight in James' eyes, asked him where he lived, and asked him to put his cell phone away. James answered the officer's question and complied with the request to put his phone away.

While the officers were talking to James, Boris came out of the house to smoke a cigarette. When he saw the officers talking to his younger brother he yelled, "Why are you talking to him? He didn't do anything wrong." (J.A. 38-39.)[1] According to James, Officer Notarantonio responded, "You're 25-years-old. You're living with your mom. She needs to kick your ass out." (J.A. 39.) Boris responded by yelling, "Get off my property white boy." (*Id.*) Officer Notarantonio immediately placed Boris under arrest, in response to which Boris repeatedly asked what he had done wrong and refused to put his arms behind his back.

Officer Cordero attempted to assist his partner in Boris' apprehension by grabbing the resisting man's legs, which resulted in Boris falling to the ground and hitting his face on the concrete driveway. At some point, Officer Notarantonio sprayed Boris with pepper spray. James saw his brother bleeding and the two officers "still on top of him," so he jumped into the middle of the dispute and tried to push Officer Cordero off of Boris. (J.A. 39.) Officer Cordero claims that James was enraged and punched him repeatedly in the back of the head. Nonetheless, James testifies that he did not hit the officer.

At this point in the altercation, the facts that the Valladares family asserts and the facts that the officers assert differ greatly. Officer Cordero's version of the facts are as follows: After James "attacked him," he grabbed and held James with his arms behind his back as the boy kicked rearward at the officer. The kicks made James lose his balance and caused them both to fall facedown on the driveway. On the way down they both hit James' stepfather's truck. Officer Cordero speculates that James broke his jaw when they fell to the ground. Once they were on the ground, the officer could not handcuff James because his body armor was in the way, so he

---

[1]"J.A." refers to the contents of the Joint Appendix filed by the parties in this appeal.

lifted James up off the ground and handcuffed him against the car.

Conversely, James testifies that the officer grabbed him and swung him headfirst into his mother's car several times. Eventually, James fell to the ground; Officer Cordero stood him up and had him under full control. The officer then slammed the teenager's face into the car, at which point James heard his jaw snap.

At the time of the incident, James was fifteen years old, five-feet-three-inches tall, and weighed 130 pounds. Officer Cordero was six-feet-two-inches tall and weighed approximately 250 pounds.

After the altercation, an ambulance transported James to Prince William County Hospital, where an x-ray confirmed that his jaw was broken. The following day, a doctor wired his jaw shut and it remained shut for the next six weeks. During those six weeks, James could consume only liquid meals; as a result, he lost eighteen pounds. Further, during this period he vomited, which caused his jaw to crack open again. Ultimately, James missed two months of school, experienced great pain, and incurred significant medical expenses.

On December 7, 2006, Ms. Valladares filed her complaint, pursuant to 42 U.S.C. § 1983 (2000), alleging that her son had been battered, negligently injured, and subjected to excessive force in violation of his Fourth Amendment rights. On January 5, 2007, Officer Cordero moved to dismiss the complaint or, in the alternative, for summary judgment, claiming he was entitled to qualified immunity. On February 5, 2007, the district court denied the motion on the grounds that the facts in the case are heavily disputed. On February 5, 2007, Officer Cordero submitted a supplement to his motion for summary judgment. On March 8, 2007, the district court granted the supplemental motion as to the claims of negligence and

denied the motion as to the claims of battery and gross negligence.

On July 19, 2007, Officer Cordero filed a motion for leave to renew his motion to dismiss or for summary judgment. The district court denied this motion on August 27, 2007, finding that Ms. Valladares alleged sufficient facts to demonstrate the existence of excessive force. On September 4, 2007, Officer Cordero filed a notice of appeal and a motion for reconsideration, again on the basis of qualified immunity. On September 24, 2007, the district court denied this motion and on October 4, 2007, Officer Cordero filed an amended notice of appeal.

## II.

Under 28 U.S.C. § 1291 (2000), this Court possesses jurisdiction over final orders of district courts. To the extent that a district court's rejection of a government official's qualified immunity defense turns on a question of law, it is a final decision under the collateral order doctrine and is subject to immediate appeal; but if the appeal seeks to argue the insufficiency of the evidence to raise a genuine issue of material fact, this Court does not possess jurisdiction under § 1291 to consider the claim. *Bailey v. Kennedy*, 349 F.3d 731, 738 (4th Cir. 2003). Thus, this Court has appellate jurisdiction to consider appeals from denials of qualified immunity only "to the extent that the official maintains that the official's conduct did not violate clearly established law." *Winfield v. Bass*, 106 F.3d 525, 529 (4th Cir. 1997) (en banc).

The inquiry into whether a defendant is entitled to qualified immunity includes a two-part analysis. First, we must determine whether the underlying allegations of a claim substantiate a violation of a constitutional right. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). In order to determine whether the facts demonstrate that the officer's conduct violated a constitutional right, we evaluate the facts in the light most favorable to the plaintiff. *Saucier*

*v. Katz*, 533 U.S. 194, 121 (2001). Second, if there is an alleged violation of a constitutional right, the court must determine whether the violation was of a "clearly established" right. *Ridpath*, 447 F.3d at 306. In order for the right to be clearly established it must be:

> "sufficiently clear that a reasonable official would understand that what he is doing violated that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted); *see also Ridpath*, 447 F.3d at 306 (citing *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2006) (noting that if there is an alleged violation of a constitutional right, the court must determine whether the "violation was of a 'clearly established' right 'of which a reasonable person would have known.'")); *Saucier*, 533 U.S. at 201.

It is clearly established that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force. *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005). In this case, the district court found that Ms. Valladares alleged sufficient facts to establish a violation of a constitutional right. Here, Officer Cordero appeals the court's conclusion that he knew or should have known that his actions were excessive. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The test for whether an officer knew or should have known whether a particular seizure under the Fourth Amendment was excessive is a "reasonableness" test. *See Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989); *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (providing that a court determines

"whether an officer has used excessive force to effect a seizure based on a standard of 'objective reasonableness.'") (quoting *Graham*, 490 U.S. at 399). The Supreme Court found that the test for "reasonableness" under the Fourth Amendment is not "capable of precise definition." *Jones*, 325 F.3d at 527 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Nonetheless, the Court stated that proper application requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

"We review de novo the district court's denial of qualified immunity, employing our full knowledge of our own and other relevant precedents." *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

## III.

Appellant's appeal is limited to the second prong of the qualified immunity analysis: whether a reasonable officer would have known that his actions violated a clearly established right. *Harlow*, 457 U.S. at 818. This Court must take the facts in the light most favorable to James, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), and view them from the perspective of a reasonable officer.[2] The relevant

---

[2]Officer Cordero argues that James "filed no statement of genuine issue in opposition to . . . Officer Cordero's Statement of Undisputed Facts." (Appellant's Br. 26.) Officer Cordero asserts that James' reliance on his affidavit in his pleadings was improper because "James' Affidavit is directly contradictory to James' deposition in certain respects that are vitally important to the qualified immunity issue." (Appellant's Br. 27.) Officer Cordero's effort to persuade this Court to value his testimony over James' testimony is futile. *See Anderson*, 477 U.S. at 249. Furthermore, to the extent that Officer Cordero asks this Court to evaluate the district court's stated genuine issues of material fact, his argument must fail procedurally. This Court does not have jurisdiction to decide whether the dis-

facts viewed in the light most favorable to James dictate that James shoved Officer Cordero; Officer Cordero responded by

---

trict court was presented with sufficient evidence to determine that there was a genuine issue of material fact. *Bailey*, 349 F.3d at 738.

Additionally, Officer Cordero invites this Court to disregard James' affidavit because of its "inconsistencies"; specifically, James' affidavit testimony that he went "limp" early in the fight and his deposition testimony that he "went loose" at a "significantly later point in the fight, immediately after he admitted to lying on the ground 'kicking again' at Officer Cordero." (Appellant Br. 29.) Nonetheless, this "inconsistency" does not invalidate James' argument. Both the testimony in James' affidavit and in his deposition claim that Officer Cordero broke his jaw after James stopped struggling. James makes this point consistently. Whether James contradicted himself to the point of discrediting his testimony is a question for a trier of fact to decide. The district court considered the record as a whole, including James' separate testimonies, and determined that there are several genuine issues of material fact. Again, this Court does not have jurisdiction to evaluate the sufficiency of the evidence presented to the district court to raise a genuine issue of material fact.

Finally, Officer Cordero argues that the district court must have agreed with the logic of his inconsistency argument because "the September 24, 2007 Order corrects the August 27, 2007 Opinion by substituting language from James' deposition instead of the language taken from James' Affidavit." (Appellant's Br. 27.) Officer Cordero asserts that the order's substitution of the language from the deposition for the language in the affidavit supports his argument that James' testimonies directly contradict each other and, therefore, there is no genuine issue of material fact. (*Id.*)

This incredible leap in logic could not be consistent with the logic of the district court or else the court would not have repeatedly denied Officer Cordero's motion for summary judgment. Moreover, it is unclear why the district court entered its "corrected" order. The one-page order claimed to grant in part and deny in part the defendant's motion for reconsideration of the court's denial of the defendant's motion for summary judgment. To this end, the order bulleted its amendments to the previous opinion, granting Officer Cordero's motion to stay and inserting corrected language, yet it never explicitly stated which parts of the motion would remain denied. Therefore, this Court must assume that apart from the corrected language and the newly granted motion to stay, the court wished to maintain its denial of Officer Cordero's motion. Thus, this part of the officer's argument also fails.

swinging James into a car, resulting in James falling to the ground; Officer Cordero then picked James up off the ground, had James under full control, stood him on his feet, and slammed James' head into a car twice, eventually breaking James' jaw.

Officer Cordero argues that when viewing the facts in the light most favorable to James, a reasonable officer would not have known that he was violating a clearly established right because a reasonable officer would not have known that James had surrendered. Yet, in both James' affidavit and his deposition, James claims that Officer Cordero broke his jaw *after* slamming him into the car and *after* he either went "limp" or "loose." Even if this Court disregarded James' testimony about going "limp" or "loose" because he later testifies that he was kicking while on the ground, James and Officer Cordero both testify that, after that point, the officer picked James up off the ground and neither party testifies that James resisted being lifted up. This signifies a point of surrender. Of course, Officer Cordero claims that he then placed James against his mother's car and handcuffed him. Nonetheless, James testifies that after Officer Cordero had him under full control he then forcefully shoved his face into his mother's car and broke his jaw. Again, this Court must accept James' version of the facts.

In Officer Cordero's brief and during oral argument, counsel for the officer seemed to indicate that James should have verbally communicated his intent to surrender to the officer. This Court knows of no case, and Appellant does not cite a case, that requires a person to verbally communicate his or her wish to surrender before a reasonable officer is put on notice that further force is unnecessary. Such a requirement would create an unduly steep burden. A trial court must have the freedom to distinguish between the circumstances surrounding a person who says he is surrendering while continuing to fight and those surrounding a person who does not articulate that he is surrendering but clearly has ceased fight-

ing. In this case, the district court properly determined that James surrendered before Officer Cordero broke his jaw. Moreover, the district court correctly determined that a reasonable officer would not have exerted the level of force that Officer Cordero used in the situation with which Officer Cordero was confronted. *See Saucier*, 533 U.S. at 202.

Despite Officer Cordero's argument to the contrary, this Court agrees with the district court's evaluation of the excessive force issue in this case. The district court did a full *Graham* analysis of the facts from the perspective of a reasonable officer, finding that the first *Graham* factor (severity of the underlying offense) weighed *against* Ms. Valladares because James should never have shoved Officer Cordero. Nonetheless, the district court found that the second *Graham* factor (whether the suspect poses an immediate threat to the safety of the officer or others) weighed against Officer Cordero because James did not pose a threat. This is a fair assessment because when viewing the facts in the light most favorable to James, this Court finds that the officer was able to control James before he broke the young man's jaw. Additionally, according to James' testimony, his brother Boris was not an immediate threat because he was on the ground bleeding and restrained. Finally, the court determined that James stopped resisting the arrest before the alleged excessive force occurred, which satisfies the last prong of the *Graham* analysis (whether he was actively resisting arrest).

Thus, as a legal matter, the district court correctly determined that James proffered evidence of a violation of a constitutional right and that, as alleged, Officer Cordero knowingly violated James' clearly established right. *See Graham*, 490 U.S. at 396. Furthermore, the district court correctly characterized the officer's actions as "unnecessary, gratuitous, and disproportionate" (J.A. 298) and properly concluded that he was not entitled to qualified immunity. This Court agrees with the district court's analysis and finds that it is supported

by relevant law.[3] *See Schultz v. Braga*, 455 F.3d 470, 478 (4th Cir. 2006); *Young v. Prince George's County, Maryland*, 355 F.3d 751, 756 (4th Cir. 2004).

## IV.

Based on the standard for summary judgment, the district court correctly determined that the facts viewed in the light most favorable to James indicate that Officer Cordero's actions were not objectively reasonable and violated James' clearly established Fourth Amendment right to be free from excessive force. Thus, the officer was precluded from protection under the doctrine of qualified immunity.

*AFFIRMED*

---

[3]At the end of Officer Cordero's brief, he argues, "Although the state law battery claim is not in issue on appeal, if this Court disposes of James' federal claims, James' state law claims should also be dismissed on remand to District Court." (Appellant's Br. 49) (citation omitted). This issue is moot because this Court finds that the district court properly determined that "taking the facts in the light most favorable to the Plaintiff, the Court cannot find Officer Cordero acted reasonably as a matter of law." (J.A. 297.)