**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1839**

JAMES ROBERTSON; JERRY MARCUM; LANDON HATFIELD; ROBERT LEE
EVANS; SHAWN CHRISTOPHER COOK; WILLIAM LUCAS; SHANNON
HATFIELD,

        Plaintiffs - Appellees,

    and

SOFIA ROBERTSON,

        Plaintiff,

        v.

TODD ELLIOTT, in his individual and official capacity as a
police officer for the Wayne County Sheriff's Department;
DAVE PENNINGTON, in his official capacity as the Sheriff of
Wayne County,

        Defendants – Appellants,

    and

REX VARNEY, in his individual and official capacity as lead
investigator for the Wayne County Sheriff's Department,

        Defendant.

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.   (3:05-cv-00777; 3:06-cv-00374; 3:06-cv-00375;
3:06-cv-00377; 3:06-cv-00378; 3:06-cv-00379; 3:06-cv-00376)

Argued:  January 28, 2009        Decided:  March 6, 2009

Before NIEMEYER and MICHAEL, Circuit Judges, and Arthur L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

---

Reversed and remanded by unpublished per curiam opinion.

---

**ARGUED:** Jason Eric Wandling, SHUMAN, MCCUSKEY & SLICER, P.L.L.C., Charleston, West Virginia, for Appellants. Lonnie Carl Simmons, DITRAPANO, BARRETT & DIPIERO, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** John F. McCuskey, Dwayne E. Cyrus, SHUMAN, MCCUSKEY & SLICER, P.L.L.C., Charleston, West Virginia, for Appellants. Heather M. Langeland, DITRAPANO, BARRETT & DIPIERO, P.L.L.C., Charleston, West Virginia; Roger D. Forman, Jason E. Huber, Jonathan L. Matthews, FORMAN & HUBER, L.C., Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The seven plaintiffs in this case were arrested and indicted on drug charges in Wayne County, West Virginia, on the basis of evidence fabricated by a confidential informant. The plaintiffs sued the Wayne County Sheriff's Department, Sheriff David Pennington, and Chief Field Deputy (Chief Deputy) Todd Elliott, asserting claims under 42 U.S.C. § 1983 and state law. Sheriff Pennington and Chief Deputy Elliot were sued in both their individual and official capacities. The Sheriff and the Chief Deputy appeal the district court's denial of their motion for summary judgment based on qualified immunity. We reverse, concluding that these two defendants are entitled to qualified immunity on the § 1983 claims brought against them in their individual capacities.

I.

We take the facts as assumed by the district court, which considered the record in the light most favorable to the non-moving parties (here, the plaintiffs). <u>Rogers v. Pendleton</u>, 249 F.3d 279, 285 n.2 (4th Cir. 2001). Wayne County deputy sheriffs arrested Thomas Osborne in Fort Gay, West Virginia, on May 9, 2003, for writing worthless checks. Immediately after his arrest, Osborne offered to assist law enforcement by participating in drug transactions as a confidential informant.

3

The arresting deputies contacted Chief Deputy Elliott, who in turn contacted Sheriff Pennington, for authorization to use Osborne as a confidential informant. With Sheriff Pennington's approval, Chief Deputy Elliot took Osborne to a local sports bar to make two controlled drug purchases (or "drug buys") that same night. Forensic laboratory results conducted months later confirmed the presence of cocaine and Hydrocodone in the substances that Osborne purchased in those initial transactions.

Following these initial transactions, Chief Deputy Elliot and other Wayne County deputies asked Osborne to assist in approximately thirty-one additional drug buys as a confidential informant. In order to profit from the arrangement, Osborne faked many of the purchases. Prior to a transaction he would hide a baking soda mixture in a baggie in a compartment cut in the sole of one of his sandals. He would then approach an individual (whom he typically chose at random) and act as though he was purchasing drugs. Before returning to the police, he would replace the baking soda mixture in his shoe with the cash he received from the deputies. He would then deliver the baking soda mixture to the deputies. In some instances Osborne recorded fake conversations in which he changed his voice to imitate the individuals he implicated and gave those recordings to the deputies. Osborne used the cash he kept from the fake purchases to buy OxyContin, a controlled

4

substance.  The district court recounted how the deputies dealt with Osborne and what the consequences of his fabrications were:

> Although Deputy Elliot and others acknowledged the importance of searching a confidential informant, both before and after a drug transaction, it is clear that Osborne was seldom, if ever, subject to a thorough check.  Osborne was frequently allowed to use his own vehicle during the buys.  (On one occasion his mother even accompanied him on the buy.)  Although Osborne's sheer number of contacts alone might have indicated that he was a habitual user of illegal drugs, deputies never tested him.  (Osborne himself testified that he was probably high during many, if not most, of these transactions.)  Osborne also selected the targets of these transactions on his own.  It is not clear how often (if at all) officers conducted field tests to confirm the presence of drugs.

> While the sheriff's deputies clearly did not take all possible precautions in the use of Osborne as an informant, the department did . . . undertake some measures to validate the buys.  A check of Osborne's criminal record in West Virginia and Kentucky, though perhaps cursory, was conducted before any of the transactions took place.  Osborne wore a wire during at least some buys.  Deputies obtained warrants for each arrest and every suspect -- including each of the plaintiffs -- was indicted by a Wayne County grand jury.  The Wayne County Prosecutor, Jim Young, had some oversight . . . .

J.A. 839-40.  There is no suggestion that Sheriff Pennington, Chief Deputy Elliott, or any deputy or investigator in fact knew that Osborne was faking the drug buys.

As a result of the fabricated evidence, twenty-nine individuals, including each of the plaintiffs, were arrested and indicted.  Because of a backlog at the forensic laboratory used by the Wayne County Sheriff's Department, the substances Osborne

5

delivered to the deputies were not tested until trial dates were set for the individuals implicated by Osborne. But when the forensic results finally did become available, they revealed that the substances delivered by Osborne were not in fact controlled substances. The Wayne County prosecutor ultimately dismissed all charges against the plaintiffs and other individuals inculpated by evidence gathered through Osborne.

The plaintiffs in this appeal, whose claims the district court consolidated, were arrested and indicted as a result of the evidence falsified by Osborne. They filed suit against the Wayne County Sheriff's Department, Sheriff Pennington, Chief Deputy Elliot, and several deputies or investigators who have since been dismissed. The plaintiffs allege violations of 42 U.S.C. § 1983 and the West Virginia constitution and assert several claims under state law. Sheriff Pennington and Chief Deputy Elliot were sued in both their individual and official capacities. The Sheriff and Chief Deputy Elliott moved for summary judgment on several bases, including qualified immunity. The motion was denied by the district court. Sheriff Pennington and Chief Deputy Elliott appeal the denial of qualified immunity.

## II.

We have jurisdiction to review a district court's denial of a claim of qualified immunity to the extent the ruling turns on a question of law. Henry v. Purnell, 501 F.3d 374, 376 (4th Cir. 2007); Winfield v. Bass, 106 F.3d 525, 529 (4th Cir. 1997) (en banc). Our review of the denial of qualified immunity is de novo, but we take as true the facts that the district court "deemed sufficiently supported for purposes of summary judgment." Rogers, 249 F.3d at 285 & n.2 (quoting Behrens v. Pelletier, 516 U.S. 299, 313 (1996)). Where the district court is not explicit, we may review the record "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Id. (quoting Behrens, 516 U.S. at 313); see also Valladares v. Cordero, 552 F.3d 384, 389 (4th Cir. 2009).

## III.

In evaluating claims of qualified immunity, we have first decided whether the facts, as taken in the light most favorable to the plaintiff, make out a violation of a constitutional right. Henry, 501 F.3d at 377. If this first step has been satisfied, we have then decided whether the right at issue was clearly established at the time of the alleged misconduct. See id.; see also Pearson v. Callahan, No. 07-751,

7

slip. op. at 6, 10-11 (U.S. Jan. 21, 2009) (noting that this two-step sequence is no longer mandatory, but is often appropriate and beneficial).

In denying qualified immunity here, the district court concluded that there was a material factual dispute about whether the Sheriff and Chief Deputy Elliott were responsible for a custom of deliberate indifference to conduct such as Osborne's. Robertson v. Pennington, No. 3:05-cv-0777 (S.D. W. Va. July 18, 2008). The district court invoked the framework applicable to government entity and official capacity liability, holding that "a jury could fairly conclude that the Wayne County Sheriff's Department, Sheriff Pennington, and Deputy Elliot themselves were responsible for violating plaintiffs' constitutional right not to be deprived of liberty as the result of fabricated evidence." Robertson, No. 3:05-cv-077, slip op. at 10; see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978) (indicating that government entities may be liable for unconstitutional policies or customs); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (noting that official capacity claims require plaintiff to prove a policy or custom under Monell). The Monell framework applicable to government entity (or official capacity) liability bears on whether a government entity is sufficiently responsible for a constitutional deprivation to hold the entity liable under

8

§ 1983; Monell does not bear on whether there has been a constitutional deprivation in the first place.

Here, it is appropriate for us to begin by considering the question of whether the plaintiffs have shown a violation of a constitutional right. See Pearson v. Callahan, slip op. at 10-11. The plaintiffs argue that they were unconstitutionally deprived of their liberty as the result of fabricated evidence. We have recognized a constitutional right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity." Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005) (emphasis added) (internal quotation omitted). In the present case, however, the confidential informant (Osborne) rather than a government officer created false evidence. Neither the facts as viewed by the district court nor any allegations in the record (even taken in the light most favorable to the defendants) suggest that Sheriff Pennington or Chief Deputy Elliott intended that Osborne fabricate evidence or had knowledge that Osborne fabricated the evidence used to arrest and indict the plaintiffs.

The facts as recounted by the district court are also inadequate to suggest that Pennington and Elliot were reckless with respect to the falsity of the evidence offered by Osborne. The district court noted that the deputies did take some

9

precautions to validate Osborne's actions.  <u>Robertson</u>, No. 3:05-cv-077, slip op. at 3.  They checked Osborne's criminal record before any transactions took place, required him to wear a wire during some of the buys, and submitted the substances he turned in for forensic testing.  <u>Id.</u>  Osborne was able to bypass law enforcement precautions by concealing substances in a compartment in his sandal.  <u>Id.</u> at 4.  Because the plaintiffs' allegations do not suffice to establish recklessness, we need not decide whether the Constitution affords the plaintiffs a right against a government officer's recklessness with respect to false or fabricated evidence.  See <u>Justice v. Dennis</u>, 793 F.2d 573, 578 (4th Cir. 1986) (noting that recklessness and gross negligence may be sufficient for some claims under the due process clause).

At bottom, the plaintiffs argue that the Sheriff and his deputies failed to act as <u>reasonable</u> police officers in using Osborne as a confidential informant.  To succeed on this claim, the plaintiffs would have to demonstrate that there is an established constitutional right not to be deprived of liberty as a result of false evidence negligently gathered by a government officer.  The Supreme Court, however, has held "that the Due Process Clause is simply not implicated by a <u>negligent</u> act of an official causing unintended loss of or injury to life, liberty or property."  <u>Daniels v. Williams</u>, 474 U.S. 327, 328

10

(1986); <u>see also</u> <u>Jean v. Collins</u> 221 F.3d 656, 660 (4th Cir. 2000) (en banc). There is no constitutional right that protects against the deprivation of liberty as a result of negligently gathered evidence.

Because the facts alleged by the plaintiffs do not make out a violation of a constitutional right, Sheriff Pennington and Chief Deputy Elliott are entitled to qualified immunity. The district court erred by failing to grant summary judgment to Pennington and Elliott on those claims for which qualified immunity is an available defense, namely, the § 1983 claims asserted against them in their individual capacities. The district court's order denying qualified immunity to Sheriff Pennington and Chief Deputy Elliott is therefore reversed. The district court will enter the appropriate order on remand.

<u>REVERSED AND REMANDED</u>

11