**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 09-6452**

_____

MICHAEL ANDREW SMITH,

              Plaintiff - Appellee,

        v.

RICHARD T. KENDALL,

              Defendant - Appellant,

        and

SANFORD POLICE DEPARTMENT,

              Defendant.

_____

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.   N. Carlton
Tilley, Jr., Senior District Judge.  (1:05-cv-00495-NCT-PTS)

_____

Submitted:  December 29, 2009        Decided:  March 8, 2010

_____

Before GREGORY, SHEDD, and AGEE, Circuit Judges.

_____

Affirmed in part; dismissed in part by unpublished per curiam
opinion.

_____

Rachel E. Daly, WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Winston-
Salem, North Carolina, for Appellant.   Romallus O. Murphy,
Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Richard T. Kendall, a police officer with the Sanford Police Department in North Carolina ("SPD"), appeals the district court's order denying his motion for summary judgment in Michael Andrew Smith's civil action alleging a Fourth Amendment excessive force claim under 42 U.S.C. § 1983 (2006). We affirm in part and dismiss in part.

I.

On the evening of January 1, 2003, Kendall, on duty with the SPD, observed a sport utility vehicle ("SUV") with its rear taillights out. Kendall followed in his patrol car and activated its blue lights in an effort to stop the SUV, but Smith, the driver, responded by accelerating the SUV. Kendall pursued Smith along a gravel road at a high rate of speed, at times, activating the patrol car's siren. Smith ran through two stop signs before the vehicles reached an unpaved area, around a local foundry that contained sand, mud, and railroad tracks. A light was present but did not illuminate the area, and it was drizzling and the sand was muddy. Smith's SUV came to a stop, and Kendall parked the patrol car nearby and approached the SUV on foot. After approaching the SUV, Kendall fired multiple gunshots into its windshield. The fact of the shooting is

2

undisputed, but the parties' accounts of the circumstances leading up to it differ greatly.

Kendall stated in an affidavit that after he approached the front of the SUV, Smith "revved" its engine, and the SUV "lunged" toward Kendall. Kendall shouted at Smith to stop, but the SUV continued to "wildly bounce," moving forward toward Kendall upon gaining traction and then moving backward upon losing traction. Kendall lost his footing, and his leg became stuck against a pile of muddy sand. Smith continued to rev the SUV's engine. Fearful that the SUV would run over him, Kendall pulled out his firearm, aimed at Smith's right arm in an attempt to knock it off the steering wheel, and fired the gun once through the SUV's windshield. Smith, however, continued to rev the SUV's engine, and when the SUV came within a few feet of Kendall, the officer fired six more times through the windshield. Smith continued to rev the SUV's engine, and it was not until after Kendall's eighth shot that Smith finally took his hands off the steering wheel.

By contrast, Smith stated in an affidavit that after Kendall approached the SUV, he ordered Smith to turn off its engine and put his hands up. When Smith heard this command, he complied. While the SUV's engine was off and Smith's hands raised, Kendall fired his gun several times through the SUV's windshield.

Smith was later taken to a hospital, and the operating physician discovered two bullet wounds in Smith's right arm. According to the physician's deposition testimony, the bullet entry wounds Smith received were not like those he would have received had he had his arms extended above his shoulders during the shooting. Ruts of several feet in length were present in the mud around the foundry, and there was mud splatter on the SUV.

Kendall moved for summary judgment on the ground of qualified immunity. The district court denied Kendall's motion on the qualified immunity defense, concluding that there existed a genuine dispute as to whether the shooting constituted excessive force under the Fourth Amendment and whether a reasonable officer in Kendall's position would have known that his actions were unlawful. Kendall noted this interlocutory appeal.

II.

A government official such as Kendall is not entitled to qualified immunity from liability for civil damages if a reasonable officer in his position would have known that his shooting of Smith would violate Smith's constitutional right to be free from an excessive application of force. See Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). Kendall requests that

4

the district court's qualified immunity determination be reversed on the current record.

This court may exercise jurisdiction only over final orders, 28 U.S.C. § 1291 (2006), and certain interlocutory and collateral orders, 28 U.S.C. § 1292 (2006); Fed. R. Civ. P. 54(b); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-47 (1949). Although the Supreme Court has recognized that an order rejecting a claim of qualified immunity is an appealable order at the summary judgment stage, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), it has more recently explained that immediate appealability of an order declining to accept a defense based on qualified immunity is appropriate only if the denial rests on a purely legal determination that the facts do not establish a violation of a clearly established right, Johnson v. Jones, 515 U.S. 304, 319-20 (1995). Thus, "if the appeal seeks to argue the insufficiency of the evidence to raise a genuine issue of material fact, this court does not possess jurisdiction under [28 U.S.C.] § 1291 to consider the claim." Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009); see Winfield v. Bass, 106 F.3d 525, 529-30 (4th Cir. 1997) (en banc). This court must accept the facts as set forth by the district court in assessing the summary judgment ruling. Bailey v. Kennedy, 349 F.3d 731, 738 (4th Cir. 2003).

Relying on the parties' conflicting accounts of the events that immediately preceded the shooting, the district court concluded that there existed in the record evidence from which a reasonable trier of fact could conclude that Smith was not posing an imminent threat to Kendall at the time Kendall fired his weapon. While Kendall claims that the record shows that his use of force was reasonable because he faced an imminent threat of being run over by Smith's SUV, we lack jurisdiction to consider this claim, as it argues the "insufficiency of the evidence to raise a genuine issue of material fact." Winfield, 106 F.3d at 529. We therefore dismiss this portion of the appeal.

## III.

Kendall also asserts that even granting that he violated Smith's rights under the Fourth Amendment, he is still entitled to qualified immunity because a reasonable officer in his position could have believed that the use of force employed here was reasonable. This is so, Kendall contends, because, at the time of the shooting in January 2003, the illegality of his use of force in this case was not clearly established because the law of this Circuit was unsettled. While we possess jurisdiction to consider this claim, see id. at 530, we nonetheless conclude it fails.

6

To determine whether the district court erred in rejecting a claim of qualified immunity, this court asks whether a violation of a right secured by the Fourth Amendment occurred and, if so, whether the right was so clearly established at the time of the violation that a reasonable officer in Kendall's position could not have believed he was acting legally.  See Gray-Hopkins v. Prince George's County, 309 F.3d 224, 231 (4th Cir. 2002).  At the time of the shooting in January 2003, the law was clearly established that claims of excessive force during arrest are governed by the Fourth Amendment and are analyzed under an "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388, 395-96 (1989).  Application of this standard requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  Id. at 396 (internal quotation marks omitted).  The analysis also requires "careful attention to the facts and circumstances of each particular case, including . . . whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  Because police officers may have to make split-second decisions in circumstances that are "tense, uncertain, and rapidly evolving," facts are to be "evaluated from the perspective of a reasonable

7

officer on the scene, and the use of hindsight must be avoided." Gray-Hopkins, 309 F.3d at 231. An officer may use deadly force when he has good reason to believe that the suspect presents a threat of serious physical harm to himself or others. Tennessee v. Garner, 471 U.S. 1, 11 (1985). Further, under Graham, a court must focus on the moment when deadly force was used. Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991). Actions prior to that moment are not relevant in evaluating whether the force used was reasonable. Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996).

Based on Smith's version of the events giving rise to this litigation, Smith was in the SUV with the engine turned off at the time Kendall started shooting at him. He was not resisting arrest or endangering the safety of Kendall or others. If this version of events is accepted, a trier of fact could easily conclude that a Fourth Amendment violation occurred and that a reasonable officer in Kendall's position could not have believed that he was acting lawfully in employing deadly force.

IV.

For the above reasons, we affirm the district court's determination that the right in question was clearly established and dismiss the remainder of the appeal for lack of

8

jurisdiction.[*]  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART;</u>
<u>DISMISSED IN PART</u>

---

[*] By this disposition, we indicate no view as to which of the competing versions of events is more likely or which should be accepted by the factfinder.