**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-6403**

RODNEY WILLIAM WOLFE,

             Plaintiff - Appellant,

        v.

JOEL  FOOTEN,  Dep.,  W.C.S.D.;  THOMAS  ROUTZAHN,  Dep.,
W.C.S.D.; WASHINGTON COUNTY, MARYLAND,

             Defendants – Appellees,

        and

WASHINGTON COUNTY SHERIFF'S DEPARTMENT,

             Defendant.

Appeal from the United States District Court for the District of
Maryland,  at  Greenbelt.    Peter  J.  Messitte,  Senior  District
Judge.  (8:08-cv-03479-PJM)

Argued:  January 26, 2011            Decided:  March 21, 2011

Before DUNCAN, DAVIS, and WYNN, Circuit Judges.

Reversed  and  remanded  by  unpublished  opinion.    Judge  Duncan
wrote the opinion, in which Judge Davis and Judge Wynn joined.

John Edgar Mallonee, MALLONEE LAW FIRM, Bethesda, Maryland, for
Appellant.   Rodger  Owen  Robertson,  LAW  OFFICE  OF  JOSEPH  M.
JAGIELSKI, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises out of the district court's grant of summary judgment to defendant Maryland police officers, and their employer Washington County, on plaintiff Rodney Wolfe's excessive force claim under 42 U.S.C. § 1983. Wolfe argues that Officers Joel Footen and Thomas Routzahn violated his Fourth and Fourteenth Amendment rights while arresting him on domestic-violence charges. As our review of the record discloses disputed issues of material fact, we reverse the grant of summary judgment.

I.

We review the facts in the light most favorable to Wolfe, drawing all reasonable inferences in his favor. See Robinson v. Clipse, 602 F.3d 605, 607 (4th Cir. 2010). On January 24, 2008, at around 11:20 pm, Officers Footen and Routzahn, defendants here, responded to a report of domestic violence at a residence in Williamsport, Maryland. While en route, they were informed that the suspect, Wolfe, was violating a Final Protective Order. They were also informed that Wolfe had a history of violence. Officers Footen and Routzahn were the first to arrive on the scene, along with a third police officer who remained outside the residence for the duration of the events at issue.

3

Upon arriving at the residence, the officers were approached by fourteen-year-old Tiffany Wolfe, who informed them that she had run out of the house when her father, Mr. Wolfe, had started hitting her mother and sister. When nobody responded to the officers' shouts at the front entrance, Officers Footen and Routzahn opened the unlocked door and entered the home. The two began to investigate the first floor of the multi-story residence, but were stopped short by a female voice's cry for help from upstairs. The officers proceeded up the stairs and entered a dark bedroom, in which they found two women lying on a bed: Heather Twigg--whom Officer Footen knew from an earlier encounter--and Kayla Wolfe ("Kayla"), Ms. Twigg's daughter with Mr. Wolfe. The officers asked the women where they could find Wolfe, but neither woman told them.

As Officers Footen and Routzahn continued their search of the house, three more officers arrived on the scene: Officers Price, Embly, and McCarty. Officer Price spoke with Ms. Twigg and Kayla. He learned that Wolfe was somewhere in the same upstairs bedroom in which the two women had been found and that Wolfe was unarmed. Officer Price sent Kayla to get the other officers. After ensuring that Ms. Twigg had also left the room, Officers Footen, Routzahn, Price, Embly, and McCarty entered to search for Wolfe.

4

The officers found Wolfe hiding between a television stand and the bed on which the women had been lying. Wolfe was drunk. Officer Price shone his Taser's laser sight on Wolfe, and another officer ordered Wolfe to show his hands. Wolfe complied, extending his hands while remaining in a seated position. Officer Footen handcuffed Wolfe's hands in front of his body. Wolfe was "physically calm and not fighting." J.A. 301.

Officer Footen told Wolfe to stand up so that he could walk downstairs. Again, Wolfe complied.[1] As Wolfe was rising to his feet, Officer Footen pulled his handcuffs to help him stand up. Officer Footen's pressure on the "tight" handcuffs cut Wolfe's wrists and caused particular pain to his left hand, where he had a prior injury. Wolfe "tugged" backwards on his handcuffs, J.A. 151, and began to curse, declaring "This is why you mother fuckers are getting killed." J.A. 137. Wolfe maintains that his statement was a reference to a then-recent incident in which a Police Academy classmate of Officer Footen had been killed. Officer Footen had spoken at the slain officer's funeral.

_____

[1] Wolfe's account of succeeding events diverges sharply from the officers. As discussed below, the officers have presented no evidence to corroborate their competing version of events. Consistent with our obligation to draw all reasonable inferences in Wolfe's favor, Clipse, 602 F.3d at 607, we treat his testimony as true for purposes of summary judgment.

After Wolfe's exclamation, Officer Footen threw him down onto the bed. Wolfe laughed, at which point Officer Routzahn placed his boot on the middle of Wolfe's neck. As Wolfe moved his head, struggling to breathe, Officer Footen "jumped on [his] midsection." J.A. 152. Wolfe tried to inform the officers that he had previously injured his ribs, stating "Look, I got broken ribs. . . you all don't have to do this." Id. He also moved his legs forward and backwards in an effort to maneuver into a fetal position to protect his ribs and face.

In the meantime, Officer Footen grabbed Wolfe's hands in one hand and began "elbowing" Wolfe in the right side with his other arm. J.A. 154. Officer Routzahn removed his foot from Wolfe's throat and kicked him twice in the side of his face. In response, Wolfe laughed and called the officers insulting names, including "bitches." J.A. 162. He also made a "hocking" sound to "insinuate" that he would spit at the officers. J.A. 243-44.

At that point, Officer Routzahn "stomped" on Wolfe's face and said "Don't spit on us." J.A. 166. Officer Footen released his grip on Wolfe's hands, whereupon Officer Routzahn punched Wolfe. Wolfe again laughed at the blow and said "You hit like a little bitch." J.A. 244.

Officer Routzahn unholstered his flashlight and struck Wolfe twice in his forehead. Wolfe responded "Is that all you got?" and once again called Officer Routzahn a "bitch." J.A.

6

244. Officer Routzahn then raised his flashlight and "swung it like a club" into the side of Wolfe's head.  Id.

As a result of the blows he had sustained, Wolfe was, at this point, unable to stand up.  The officers shackled his feet and carried him to the top of the stairs.  They were assisted by a sixth officer, who arrived on the scene while Wolfe was being moved.  As Wolfe could not or would not walk, the officers began to "slide" him down the steps, with his body stretched out between at least two officers.  J.A. 224.  In an effort to "persua[de]" Wolfe to walk down the stairs, Officer Routzahn "[k]icked [him] four or five times" in the groin.  J.A. 223, 225.  At least one kick to Wolfe's groin was observed by Wolfe's mother, who was, at this point, present downstairs.[2]  The officers then helped Wolfe walk out of the house.

After Wolfe was taken outside, he was re-handcuffed with his hands behind his back and transported by ambulance to the Washington County Hospital, where he received treatment for a bleeding head wound and other injuries.  Shortly after the incident, Wolfe filed a state-court criminal complaint against Officers Footen and Routzahn.  Wolfe's complaint was dismissed and no criminal charges were brought against either officer.

---

[2] At oral argument, Wolfe's counsel was unable to explain why Wolfe's mother was present or when she had arrived.

Wolfe was charged in Maryland state court for a variety of offenses arising out of the events of January 24, including assaults upon Ms. Twigg and Officer McCarty. On October 30, 2008, Wolfe pleaded guilty to those two assaults and was sentenced to twenty-years' imprisonment.

In December 2008, Wolfe filed a handwritten civil complaint against Officers Routzahn and Footen in the federal district court of Maryland, alleging unspecified violations of his constitutional rights under 42 U.S.C. § 1983 and seeking $2.5 million in damages. On September 25, 2009, he filed an amended complaint, clarifying that he sought damages for excessive force under the Fourth and Fourteenth Amendments, as well as on various state law claims.[3] The amended complaint also added the officers' employer, Washington County, as a defendant.

In an oral decision on February 17, 2010, the district court granted summary judgment for defendants on Wolfe's excessive force claims and dismissed his state law claims without prejudice. This appeal followed.

---

[3] As discussed at oral argument, Wolfe made the unusual decision to include all of his § 1983 claims against both officers in a single count. This choice renders it somewhat difficult to determine what aspect of the night's events constituted the factual predicate for his excessive force claim. However, in light of his complaint's statement of relevant facts and his argument to the district court and on appeal, we assume that his § 1983 claim is based on both the struggle in the upstairs bedroom and the subsequent groin kicks.

We review the district court's grant of summary judgment de novo. Clipse, 602 F.3d at 607. We may affirm only if there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Id. For the reasons described below, we believe that key issues of material fact preclude the entry of summary judgment.

A.

As a threshold matter, we reject defendants' attempt to use Wolfe's statements at his state-court plea colloquy against him. Defendants argue in particular that Wolfe's alleged acceptance of responsibility for the struggle with the officers in the context of his state-court guilty plea forecloses his present claims. Defendants are correct that the doctrine of judicial estoppel can preclude relief "where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession." Lowery v. Stovall, 92 F.3d 219, 225 (4th Cir. 1996). We do not question this settled principle. We instead hold only that judicial estoppel is inappropriate on the basis of a state-court record as incomplete as this one.

Significantly, the seven pages from Wolfe's October 30, 2008, state-court plea colloquy included in the record before us represent a bare fraction of the pertinent proceedings. The

excerpted portion consists of a cover sheet, and pages 8, 12, 13, 14, 15, and 35 of the transcript. J.A. 328-334. It is not apparent from the parties' briefing why the transcript was edited in this manner or what is contained in the balance of the state-court transcript. Nonetheless, for whatever reason, the excerpt begins in the middle of Wolfe's plea colloquy and does not, for instance, include any explicit acknowledgement by Wolfe that he considered himself guilty of the crimes to which he was pleading.

Further, the transcript's rendering of the government's recitation of what it could prove at trial is also replete with missing words, marked by ellipses and/or the notation "inaudible." J.A. at 331-32. Some of these omissions occur at key junctures, as on line 5 of page 332 of the Joint Appendix, which reads "The Defendant . . . ., Trooper McCarty was hit back." J.A. at 332 (alteration in original). As Wolfe argues, these gaps could well contain material information. Moreover, Wolfe's statement to the court, which includes language on which the defendants seek to rest much of their argument,[4] appears on the final page of the excerpted transcript, is cut off mid-sentence, and is presented without any context as to why it was

_____

[4] As the language at issue is sufficiently divorced from context as to be potentially misleading, we do not quote it here.

10

offered or how it was received by the district court.  See J.A.
334.

On this fragmentary record, defendants cannot satisfy our
three-part test for judicial estoppel.  See Zinkand v. Brown,
478 F.3d 634, 638 (4th Cir. 2007) (noting that estoppel requires
(1) a party "to adopt a position that is inconsistent with a
stance taken in prior litigation," (2) the relevant position to
"be one of fact as opposed to one of law," and (3) the party to
"have intentionally misled the court to gain unfair advantage");
see also United States v. Simmons, 247 F.3d 118, 124 (4th Cir.
2001). A complete version of Wolfe's plea proceedings and the
facts to which he pleaded guilty may reveal compelling
inconsistencies between his guilty plea and his present claim.
Cf. Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008).
Such material may prove informative on remand.  But the
substantial gaps in the record preclude our reliance on Wolfe's
guilty plea for purposes of this appeal.[5]

---

[5]  Our application of judicial estoppel in similar
circumstances has relied on a far more complete record than that
presented here.  See, e.g., Lowery, 92 F.3d at 225 (noting that
the "record of the plea proceeding shows beyond dispute that the
trial judge carried out [his] mandate" "to determine that [the
defendant] entered his guilty plea voluntarily with an
understanding of the nature of the charge and the consequences
of the plea") (internal quotations omitted); id. at 221-22
(quoting extensively from the defendant's signed statement that
accompanied his plea agreement).

11

B.

With the state-court plea colloquy excluded from our consideration, the record at summary judgment is reduced to a set of competing factual claims, many of which implicate the nature and quantity of force that the officers used while restraining Wolfe. Not surprisingly, the defendants paint a far more controlled portrait of their actions than that described above; they urge that Wolfe pulled Officer Footen to the ground and struggled with the officers, cursing at them and ignoring their repeated verbal commands until Officer Routzahn struck him once with his flashlight. However, they have cited no evidence beyond their own statements and reports--which are materially inconsistent with Wolfe's testimony and his mother's affidavit-- to corroborate their version of events.

For instance, although Wolfe received medical treatment immediately after the incident, defendants' motion for summary judgment does not include any medical records. The only medical evidence presented to us on appeal is a two-page excerpt from a doctor's deposition. The doctor testified that Wolfe suffered "lacerations" and "soft tissue injur[ies]." J.A. 326. Yet, because the excerpt begins in the middle of the doctor's

12

testimony, it is unclear if that was the extent of the harm Wolfe suffered.[6]

Absent any corroborating evidence, assessment of the parties' competing narratives rests on a quintessential credibility determination, which "[w]e, of course, may not make" at the summary judgment stage. Smith v. Ozmint, 578 F.3d 246, 254 (4th Cir. 2009). For purposes of summary judgment, the salient question is whether the facts taken in the light most favorable to Wolfe present an issue of triable fact. EEOC v. Fairbrook Med. Clinic, 609 F.3d 320, 322 (4th Cir. 2010). As described below, our assessment of Wolfe's account under the relevant legal standards confirms that they do.

We evaluate excessive force claims "under the Fourth Amendment's objective reasonableness standard." Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). Although this fact-specific inquiry defies "precise definition," Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009), the Supreme Court has identified several relevant factors, see Graham, 490 U.S. at 396. These include "the severity of the crime at issue, whether the suspect

---

[6] The record also contains photographs of Wolfe's bleeding head, which were apparently taken on the night of his arrest. These images depict injuries consistent with either parties' account.

13

pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." Id.

Because the officers were acting in their official capacities--and are therefore potentially entitled to qualified immunity--a finding that they may have violated Wolfe's constitutional rights does not automatically defeat summary judgment. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). Such a determination satisfies only the first prong of our two-part qualified immunity analysis. Id. Wolfe must still show that the right violated was "clearly established," i.e., one "of which a reasonable person would have known." Id.; see also Valladares, 552 F.3d at 388. We evaluate the officers' conduct under this deferential standard and find that neither officer is entitled to qualified immunity.

Assuming, as we must, that Wolfe's testimony is accurate, the objective unreasonableness of the officers' behavior is readily apparent. Any threat presented by the unarmed Wolfe had largely abated by the time he was handcuffed. Even if the officers initially imagined Wolfe's exclamation, accompanied by a "tug" on his handcuffs, to be potentially dangerous resistance, that did not warrant Officer Footen holding him down and elbowing him while Officer Routzahn choked him with his

14

boot, kicked him twice, stomped on his face, and struck him multiple times with his service flashlight. See Bailey v. Kennedy, 349 F.3d 731, 744 (4th Cir. 2003) ("[T]he extensive blows and kicks used against an unarmed man were unreasonable, especially the use of force that continued after [the suspect] was bound hand and foot and lying face down on the floor."). Given Wolfe's evident helplessness, his laughter, use of profanity, and "insinuation" that he might spit, also did not justify the amount of force used against him. The fact that Wolfe explicitly assured the officers that their blows were unnecessary in light of his preexisting injuries underscores the unreasonableness of their behavior.

Officer Routzahn's kicks to Wolfe's groin on the stairway were similarly unreasonable. Defendants argue that such kicks were warranted, as Wolfe's proximity to his earlier domestic violence victims "rais[ed] the volatility level of his criminal acts and increas[ed] the potential danger to civilians." Appellees' Br. at 20. The claim lacks merit. According to Wolfe's testimony and his mother's affidavit, he was handcuffed, shackled, and surrounded by armed police officers when he was kicked in the groin. Under these circumstances, such blows

15

would not have been a reasonable means of reducing the risk posed to civilians.[7]

Nor, on these facts, is either officer entitled to qualified immunity. "[C]ourts have consistently applied the Graham holding and have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." Bailey, 349 F.3d at 744-45; see also Jones v. Buchanan, 325 F.3d 520, 532 (4th Cir. 2003).

In short, the version of events supported by Wolfe's testimony and his mother's affidavit presents a triable issue of material fact. The district court erred by concluding otherwise, despite prevailing factual questions as to the quantity of force used by the officers and the circumstances under which their blows were inflicted. As we have explained, "the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,'" but "a genuine question of material fact regarding '[w]hether the conduct allegedly

---

[7] Defendants' argument is further undermined by Officer Footen's testimony that a kick to the groin would not have been justified at any point that night (which is why, he claimed, such a kick was never administered).

16

violative of the right actually occurred . . . must be reserved for trial.'" Willingham v. Crooke, 412 F.3d 553, 559 (4th Cir. 2005) (quoting Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992)).

## III.

For the foregoing reasons we reverse the grant of summary judgment and remand for further proceedings.

REVERSED AND REMANDED

17